UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EMILIANO JAIME RAMOS,<br><br>     Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>     Respondent. | Civil No.: 1:25-cv-00154-DCN<br>Criminal No.: 1:23-cr-00048-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Petitioner Emiliano Jaime Ramos's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (the "Petition"). Dkt. 1; CR-048, Dkt. 63.[1] The Government opposes Ramos's Petition. Dkt. 6. Ramos did not file a reply.

Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds the decisional process would not be significantly aided by oral argument, the Court will decide the Motion on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons set forth below, the Court DENIES Ramos's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255.

## II. BACKGROUND

### A. FACTUAL

On February 15, 2023, a federal grand jury returned an indictment against Ramos.

---

[1] In this Order, "CR-048" is used when citing to the criminal record in Case No. 1:23-cr-00048-DCN; all other references are to the instant civil case.

CR-048, Dkt. 1. The underlying facts of the case are simple but horrendous:[2] Ramos kidnapped and repeatedly raped S.M. —his ex-girlfriend—and threatened to kill her with a firearm and/or knife.[3] CR-048, Dkt. 52, at 3–5. Once located, S.M.'s car was searched, and law enforcement located a large fixed-blade knife in a sheath and a personally assembled 9mm handgun belonging to Ramos. CR-048, Dkt. 52, at 5. The chamber of the firearm was empty, but the firearm was loaded with a magazine containing 16 rounds of ammunition. *Id*. Ramos was subsequently charged with kidnapping in violation of 18 U.S.C. § 1201(a)(1). CR-048, Dkt. 1.

On November 7, 2023, Ramos plead guilty to Count One of the indictment.[4] CR-048, Dkt. 58, at 1. The Court ultimately sentenced Ramos to 180 months imprisonment. *Id*. at 2. Ramos did not appeal. Ramos is currently incarcerated at the Federal Correctional Institute (FCI) in Lompoc, California, and has a release date of November 2038. Dkt 1, at 13.

---

[2] On December 23, 2022, the Nampa Police Department received a 911 text message from S.M. stating she had been kidnapped and needed help. CR-048, Dkt. 52, at 3. The text message read, "I'm in napa Idaho hotel room sleeps well room 114 he has a gun we liked to park at Office and freymerd white gmc truck canyon." *Id*. Officers learned room 114 was registered to Ramos and video footage from the hotel showed S.M. and Ramos were together. Additionally, officers found the GMC Canyon with a California license plate and that it was registered to S.M., who had been listed as a missing person from Pismo Beach, California, on December 22, 2022. *Id*.

[3] When S.M. was leaving her workplace, Ramos got in her vehicle and pulled out a firearm. He then instructed S.M. to drive to Idaho where Ramos was going to kill her so he could be in prison with his cousin. CR-048, Dkt. 52, at 4. Ramos similarly threatened S.M. with the firearm during the sexual assault(s) and to keep S.M. from running away. *See generally Id*.

[4] The indictment alleges Ramos did "unlawfully and willfully seize, confine, kidnap, abduct, inveigle, carry away and hold S.M., and, in committing or in furtherance of the commission of the offense, did willfully transport S.M. in interstate commerce from the state of California to the state of Idaho, in violation of Title 18, United States Code, Section 1201(a)(1). CR-048, Dkt. 1.

MEMORANDUM DECISION AND ORDER - 2

**B.  PROCEDURAL**

According to the plea agreement, both parties agreed that Ramos's "handgun and ammunition [was] connected to the offense and subject to forfeiture." CR-048, Dkt. 47, at 2–3. During the change of plea hearing, Ramos affirmed that the handgun was connected to the offense of kidnapping S.M. *See generally* Dkt. 6, at 24, 36.

The Presentence Investigation Report applied a two-level enhancement for Ramos's use of a firearm during the offense. CR-048, Dkt. 52. Ramos did not object to the two-level enhancement for use of a firearm, nor did he at any point question the enhancement's application. *Id*. In fact, the parties agreed to jointly recommended a 180-month sentence, which took into account their agreement that Ramos used the firearm during the commission of the kidnapping offense. *Id*. The Court agreed with the parties' recommendation and imposed a 180-month sentence. CR-048, Dkt. 58. Ramos did not appeal his conviction or sentence.

On March 10, 2025, Ramos filed his Petition. Dkt. 1. Relying on *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024)—a recent United States Supreme Court case that overturned the practice of deferring to agency interpretation of ambiguous regulations—Ramos asserts that Commentary Application Note 2, which comments on U.S.S.G. § 2A4.1, impermissibly broadens the scope of the Guidelines' verbiage of when a dangerous weapon was "used" in the commission of a crime. Dkt. 1, at 1. Accordingly, Ramos argues the Court convicted him using a sentencing enhancement that has been impermissibly broadened to include conduct of not only someone who used a "dangerous" weapon as part of the underlying criminal act, but also those who have "otherwise used"

dangerous weapons. Dkt. 1, at 2.

## IV. LEGAL STANDARD

28 U.S.C. § 2255 provides four grounds under which a federal court may grant relief to a prisoner who challenges the imposition or length of his incarceration: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) "that the sentence is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

Relief under § 2255 is afforded "[i]f the court finds that . . . there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). Furthermore, "a district court must grant a hearing to determine the validity of a petition brought under that section '[u]nless the motions and the files and records of the case *conclusively show* that the prisoner is entitled to no relief.'" *United States v. Baylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (emphasis in original) (quoting § 2255). In determining whether a § 2255 motion requires a hearing, "[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011).

A district court may dismiss a § 2255 motion based on a facial review of the record "only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *Id.* at 1062–63 (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)). In a § 2255 motion,

conclusory statements are insufficient to require a hearing. *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980); *see also James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

## V. ANALYSIS

As noted, Ramos's sole claim in his Petition is that the Court applied the guidelines too broadly in this case. More to the point, his argument is that the United States Sentencing Commissions' commentary has impermissibly broadened the text of this enhancement in violation of *Loper Bright* and that it prosecutes a broader array of conduct than originally intended. Dkt. 1. This assertion fails for four, independent reasons. The Court will address each in turn.

### A. Waiver to File a Collateral Attack Under § 2255

Pursuant to § 2255, relief is granted only for "fundamental" defects that cause a "complete miscarriage" of justice. *Hill v. United States*, 368 U.S. 424, 428 (1962). "[A] defendant's waiver of his appellate rights is enforceable if (1) the language of the waiver encompasses his right to appeal on the grounds raised, and (2) the waiver is knowingly and voluntarily made." *United States v. Charles*, 581 F.3d 927, 931 (9th Cir. 2009). (quoting *United States v. Jeronimo*, 398 F.3d 1149, 1154 (9th Cir. 2009)). In determining whether a defendant knowingly or voluntarily waived appeal, courts consider "the express language of the waiver and the facts and circumstances surrounding the signing and entry of the plea agreement." *United States v. Nguyen*, 235 F.3d 1179, 1182 (9th Cir. 2000), *abrogated on other grounds as recognized in United States v. Rahman*, 642 F.3d 1257, 1259 (9th Cir.

2011).

Here, pursuant to the terms of the plea agreement, Ramos knowingly and voluntarily waived his right to collaterally challenge his sentence—which necessarily includes any attack on applicable enhancements. The plea agreement contains an explicit provision wherein Ramos waived his right to seek collateral relief, including but not limited to a motion under § 2255, and did not reserve any right to appeal. CR-048, Dkt. 47, at 8–9.[5] The Court also conducted a thorough review of the plea agreement, including the waiver of collateral review, with Ramos and his counsel at the change of plea hearing. Dkt. 6, at 26. During this proceeding, this Court also engaged in a detailed inquiry with both Ramos and his counsel to ensure that the waiver was entered into knowingly and voluntarily. *Id*. at 26–27. Both Ramos and his counsel affirmed that understanding and agreement. *Id*.

Having found that Ramos's waiver was made knowingly and voluntarily, the Court finds the waiver to be enforceable. Accordingly, Ramos's motion under § 2255, to the extent it constitutes a collateral attack, is barred by his waiver and must be denied.

### B. Procedurally Defaulted Grounds

Ramos contends the Court erred in applying a two-level sentencing enhancement based on his use of a firearm during the commission of the kidnapping offense. However, this argument could have been raised on direct appeal. As noted, however, Ramos knowingly and voluntarily waived his right to direct appeal, and as a result, has procedurally defaulted these claims. *See United States v. Frady*, 456 U.S. 152, 165 (1982).

---

[5] As will all plea agreements, Ramos's contained an exception to the general waiver provision for claims alleging ineffective assistance of counsel. Ramos brings no such claims in his Petition here.

Setting aside waiver and default, even if these claims were properly before the Court, Ramos has not shown his counsel rendered ineffective assistance—the one area his wavier does not apply. In fact, he does not allege anything against his former attorney. The Court assesses the effectiveness of counsel based on the actual circumstances at the time. The Court has reviewed the record and finds no indication that Ramos's counsel's performance was constitutionally deficient.

Ramos also challenges—in passing—the Court's denial of continuances and the absence of a competency hearing. But these claims too were waived with the appellate rights and are, therefore, defaulted for purposes of collateral review under § 2255.

Ramos has not shown that any of his claims fall within any recognized exception to procedural default. Ramos neither asserts actual innocence nor demonstrates cause and prejudice sufficient to excuse the default. *See Murray v. Carrier*, 477 U.S. 478, 485-486 (1986). While Ramos might suggest that the appellate waiver itself was invalid, the record reflects that the waiver was made voluntarily and knowingly, and such a voluntary waiver cannot serve as cause under established precedence.

In any event, Ramos has not identified any meritorious underlying claim that would have altered the outcome of his sentence or demonstrated a constitutional error. Accordingly, Ramos's claims are procedurally defaulted and provide no basis for relief under § 2255.

## C.  Untimely Collateral Claim Under § 2255

Section 2255(f)(3) affords federal prisoners one year to file a claim under a newly recognized right that the Supreme Court has pronounced applies retroactively. Ramos

relies on *Loper Bright Enterprises v. Raimondo*, arguing it establishes a new rule of criminal procedure applicable to his case. However, *Loper Bright* does not announce a new rule of criminal procedure. As explained below, *Loper Bright* applies to civil actions and administrative review. Even assuming arguendo that *Loper Bright* was applicable in the criminal context, the Supreme Court gave no indication that its holding should be applied retroactively.

Under *Teague v. Lane*, 489 U.S. 288 (1989), a new procedural rule applies retroactively only if it either decriminalizes a class of conduct or constitutes a "watershed" rule essential to the fairness of criminal proceedings. *Loper Bright* does neither. In fact, the Supreme Court expressly declined to apply its ruling retroactively, preserving prior decisions made under the *Chevron* framework.

Because Ramos does not assert a right newly recognized and made retroactive by the Supreme Court, his motion falls outside the limitations period under § 2255 and the claim is untimely.

### D. Failure on the Merits

Even were the Court to set aside all the procedural barriers that doom Ramos's Petition and looks at the merits, he would still not be entitled to relief.

As explained, Ramos challenges the application of a firearm sentencing enhancement, arguing that *Loper Bright* affects how courts should interpret the Guidelines. This argument fails both procedurally and on the merits.

The Court properly imposed the enhancement in this case. The Presentence Investigation Report (PSR), which went unchallenged, contained undisputed facts

MEMORANDUM DECISION AND ORDER - 8

supporting the enhancement. The plea agreement also acknowledged Ramos's use of a firearm during the commission of the underlying crime. No party objected to the enhancement, and the Court applied it without relying on or interpreting any Guideline commentary.

Further, Ramos's reliance on *Loper Bright* is misplaced. That decision abrogated *Chevron* deference in administrative law, but it has not been held to apply retroactively in the sentencing context or to affect existing precedent concerning the U.S. Sentencing Guidelines. Courts—including the Ninth Circuit—continue to apply the framework from *Kisor v. Willkie*, 588 U.S. 558 (2019), when evaluating Guideline commentary. *See United States v. Trumbull*, 114 F.4th 114, 117-18 (9th Cir. 2024). In any event, this Court did not interpret ambiguous guideline language or rely on commentary in applying the enhancement, rendering *Loper Bright* inapplicable.

In sum, this is not a cognizable claim under § 2255. Ramos received the very sentence he requested—180 months' imprisonment—and has not shown any constitutional or fundamental defect that would amount to a miscarriage of justice. *See United States v. Schlesinger*, 49 F.3d 483, 485 (9th Cir. 1994); *Davis v. United States*, 417 U.S. 333, 346 (1974).

Accordingly, this claim is not cognizable under § 2255.

## VI. CERTIFICATE OF APPEALABILITY

A defendant cannot appeal a final order on a § 2255 motion unless the district court or court of appeals issue a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1) (providing that appeal cannot proceed unless "circuit justice or judge issues a certificate of

appealability"); *U.S. v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997) (interpreting "circuit justice or judge" to include district judges). The court should issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires the defendant to show that "a reasonable jurist would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

To promote efficiency, the district court is required to issue or deny a COA in the same order denying the defendant's § 2255 motion. *See* Rule 11(a) of the Rules Governing § 2255 Proceedings. If the district court denies the COA, the court should state the reason for its decision. *Aznar*, 116 F.3d at 1270. The defendant cannot appeal the denial of the COA but can file a notice of appeal and request a COA from the court of appeals pursuant to Federal Rule of Appellate Procedure 22. *See* Rule 11(a) of the Rules Governing § 2255 Proceedings. Upon so doing, the district court forwards to the court of appeals the defendant's case file, final order, and notice of appeal. *See Asrar*, 116 F.3d at 1270.

In this case, the Court denies the COA. As explained in the preceding sections, Ramos's claim does not rise to the level warranting any correction or vacatur of his sentence. No reasonable jurist would disagree with this assessment because, simply put, *Loper Bright* is not applicable in this context. Therefore, should Ramos wish to appeal, he must timely file a notice of appeal with this Court and request a COA from the Ninth Circuit.

## VII. CONCLUSION

For all the reasons stated above, the Court finds no reason to vacate or remand

Ramos's conviction or sentence. Furthermore, the Court finds it unnecessary to conduct an evidentiary hearing on the same. Thus, the Petition is DENIED.

## VIII. ORDER

**IT IS HEREBY ORDERED:**

1. Ramos's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Dkt.1); CR–048 (Dkt. 63) is **DENIED**. The Clerk of the Court is directed to file this Order in both the criminal and civil case.

2. The Court finds there is no need for an evidentiary hearing.

3. No certificate of appealability shall issue. Ramos is advised that he still may request a certificate of appealability from the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b) and Ninth Circuit Rule 22-1. To do so, he must file a timely notice of appeal.

4. If Ramos files a timely notice of appeal, and not until such time, the Clerk of the Court shall forward a copy of the notice of appeal, together with this Order, to the Ninth Circuit Court of Appeals.

DATED: July 1, 2025

David C. Nye
Chief U.S. District Court Judge